1  `

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  SKF CONDITION MONITORING, INC.,          CASE NO. 07CV1116 BTM (NLS)

12                              Plaintiff,   ORDER:

13                                           (1) DENYING DEFENDANT'S
                                             MOTION TO DISMISS FOR LACK
14        vs.                                OF JURISDICTION [Doc. #9];

15                                           (2) DENYING DEFENDANT'S
                                             ALTERNATIVE MOTION FOR
16                                           TRANSFER OF VENUE [Doc. #9];
    SAT CORPORATION,                         AND
17
                             Defendant.      (3) GRANTING DEFENDANT'S
18                                           MOTION TO STAY [Doc. #7].

19          On June 19, 2007, Plaintiff SKF Condition Monitoring, Inc. (SKF) filed the instant

20  action alleging that Defendant SAT Corporation (SAT) imports, uses and sells products which

21  infringe SKF's U.S. Patent No. 6,006,164 ("the '164 patent"). Defendant has moved to (1)

22  dismiss this action for lack of personal jurisdiction; (2) as an alternative to dismissal, transfer

23  venue to the Southern District of Texas; and (3) stay discovery in this action pending  the

24  results of a re-examination of the '164 patent by the United States Patent Office.

25                              **FACTUAL BACKGROUND**

26          Defendant SAT is a Texas corporation with offices in Houston, Texas. Defendant is

27  a relatively small corporation with sales of approximately $10.5 million in the past year.

28  Plaintiff SKF is a San Diego-based subsidiary of a larger Swedish company.  Although

1   Plaintiff's annual sales approximate $50 million, the parent group to which Plaintiff belongs

2   is a much larger corporation with annual sales of approximately $7.75 billion.

3       In January 1999, Defendant contracted to purchase the MARLIN product, which

4   monitors vibration in machines, from Plaintiff.  Defendant marketed and sold these vibration

5   monitors as part of its "IntelaTrac" condition monitoring system.  In early 2002, Plaintiff chose

6   not to renew its contract with Defendant for sale of vibration monitors.  Since that time,

7   Defendant has only conducted limited business with Plaintiff.  When a MARLIN product that

8   Defendant sold to its customers needs repair or calibration, Defendant ships that monitor to

9   Plaintiff's repair center in San Diego on behalf of its customers.

10      Because Plaintiff refused to continue selling its vibration monitors to Defendant,

11  Defendant began  importing the VIBTOOL Condition Monitor Probe (VIBTOOL) from a

12  company called Pruftechnik located in Germany.  Defendant uses the VIBTOOL device as

13  a peripheral, optional component of its IntelaTrac system.  Plaintiff alleges that Defendant's

14  importation and sale of the VIBTOOL infringes the '164 patent.

15      On October 13, 2005, Plaintiff first notified Defendant of the alleged infringement.

16  Over the next twenty months, the parties and counsel for Pruftechnik corresponded in an

17  effort to resolve this dispute.  Plaintiff  filed its complaint on June 19, 2007. On August 7,

18  2007, Pruftechnik filed a Request for Reexamination of the '164 patent, asking the U.S.

19  Patent Office to examine the validity of the '164 patent given the existence of two prior

20  patents. The U.S. Patent Office granted this request for reexamination on November 8, 2007.

21  Only discovery relating to personal jurisdiction has taken place in this matter and no trial date

22  has been set.

23

24                          **DISCUSSION**

25  A.     Defendant's Motion to Dismiss

26      Defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule

27  of Civil Procedure 12(b)(2).  Defendant argues that it lacks sufficient minimum contacts with

28

07CV1116

1  the forum district[1] and that it would be constitutionally unreasonable to require Defendant to

2  defend this action in this forum.

3      Contrary to Defendant's assertion, the test for whether the Court has jurisdiction will

4  depend on Defendant's contacts with the entire state of California, not just the Southern

5  District of California where this Court is located.  California's long-arm statute is co-extensive

6  with the limits of federal due process.  Cal. Civ. Proc. Code § 410.10.  The jurisdictional

7  inquiry under the state statute and the federal due process clause is therefore the same.

8  Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1327 (9th Cir. 1985).  Specific

9  personal jurisdiction exists if: 1) the defendant purposefully directed its activities at the

10 residents of California;  2) the plaintiff's claims arise out of those activities; and  3) it is

11 reasonable and fair for the court to exercise jurisdiction over a non-resident defendant.  3D

12 Systems, Inc. v. Aerotech Labs, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998).

13     For the reasons set forth below, the Court concludes that it has specific jurisdiction

14 over Defendant regarding the patent infringement claims brought by Plaintiff in this case.

15 Plaintiff alleges that Defendant purposefully directed its activities toward the state of

16 California by selling the accused VIBTOOL product to California residents and also directing

17 marketing activities toward California residents.[2]  As the Supreme Court explained,

18     [i]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated
       occurrence, but arises from the efforts of the manufacturer or distributor to serve
19     directly or indirectly, the market for its product in other States, it is not unreasonable

---

21 [1]    In states with more than one federal district, personal jurisdiction and venue for
corporate defendants are similar but not identical questions. The test for personal jurisdiction
is whether a non-resident corporation has sufficient "minimum contacts" with the forum state.
22 See Cal. Civ. Proc. Code § 410.10; Pacific Atl. Trading Co. v. M/V Main Express, 758 F.2d
1325, 1327 (9th Cir. 1985); 3D Systems, Inc. v. Aarotech Labs, Inc., 160 F.3d 1373, 1377
23 (Fed. Cir. 1998).  The test for proper venue, however, is whether the corporation has
sufficient contacts with the forum  district, such that it would be subject to personal
24 jurisdiction in that district  if that district were a separate state. 28 U.S.C. §§1391(c).
Although Defendant appears to have confused this distinction in its opening brief, Defendant
25 makes clear throughout its papers that  it is moving to dismiss under Federal Rule of Civil
Procedure 12(b)(2) for lack of personal jurisdiction rather than attacking venue in this district
26 of California as opposed to another district located in California.

27 [2]    Plaintiff also argues that specific jurisdiction exists because  its claims arise out
of Defendant's previous contract to purchase the MARLIN products from them. The Court
28 does not reach this issue because it finds specific jurisdiction over Defendant on other
grounds.

07CV1116

1
2
3

> to subject it to suit in one of those States . . .. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

4
5
6
7
8

In the patent infringement context, the Federal Circuit has held that specific jurisdiction exists where a defendant purposefully shipped the accused product into the forum state through an established distribution channel.  Beverly Hills Fan Co. v. Royal Sovereign Co., 21 F.3d 1558, 1565 (Fed. Cir. 1994).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Here, after conducting jurisdiction-related discovery, Plaintiff asserts that Defendant has directed the following activities toward the state of California.  Defendant SAT sold 50 units of the accused VIBTOOL device to California companies between August 2005 and May 2007. (Berretta Decl. Ex. 21)  Forty-five of these units were billed to companies located in California although shipped elsewhere and five of these units were shipped to California locations. (Berretta Decl. Ex. 21)  In addition to these completed sales, Defendant provided price quotes for three additional units of the accused device to be shipped to California locations. (Berretta Decl. Ex 22) Defendant also performed several demonstrations of the VIBTOOL device at a trade conference and various customer sites located in California from March 2006 to August 2007.(Berretta Decl. Ex 25) These demonstrations were made presumably to current customers or potential customers in order to market the product. It is clear from the above that Defendant purposefully and knowingly shipped the accused product into California on at least  five occasions and expended efforts to continue and expand their sales of accused products in the forum state.  The fact that most of the VIBTOOLs  sold to California companies were shipped out of state does not change the fact Defendant knowingly made contacts with this state by selling the accused products to corporations located in California. The Court, therefore, disagrees with Defendant's contention that their contacts with California were random and fortuitous.  The Court concludes that Defendant's contacts with the state were such that they should have reasonably anticipated being brought into court in this state.

28

The Court also finds that Plaintiff's claims arise out of Defendant's activities directed

4

1   toward California.  The Plaintiff alleges that Defendant infringed the '164 patent by importing
2   the accused products and selling them in the United States. These claims therefore arise out
3   of Defendant's contacts with California which include selling the accused product to
4   corporations located in California, shipping the accused item for use in California, and
5   marketing the product to California companies.  <u>Beverly Hills Fan Co. v. Royal Sovereign</u>
6   <u>Corp.</u>, 21 F.3d 1558, 1565 (Fed. Cir. 1994) (finding the patent infringement cause of action
7   arose from defendant's acts of  shipping the accused product into the forum state).

8       The Court must next determine whether it would be reasonable to assert jurisdiction
9   given all the circumstances. "Once it has been decided that a defendant purposefully
10   established minimum contacts within the forum State, these contacts may be considered in
11   light of other factors to determine whether the assertion of personal jurisdiction would comport
12   with 'fair play and substantial justice.'" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476-77
13   (1985).  "[W]here a defendant who purposefully has directed his activities at forum residents
14   seeks to defeat jurisdiction, he must present a compelling case that the presence of some
15   other considerations would render jurisdiction unreasonable." <u>Id.</u>

16       In determining whether the exercise of jurisdiction over a nonresident defendant
17   comports with "fair play and substantial justice," the Court must balance the following factors:
18   (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest
19   in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient
20   resolution of controversies; and (5) the interests of the states in furthering their social policies.
21   <u>Viam Corp. v. Iowa Export-Import Trading Co.</u>, 84 F.3d 424, 429 (Fed. Cir. 1996) <u>citing</u> <u>World</u>
22   <u>Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286 (1980).

23       Here, Plaintiff is a California corporation with its principal place of business located in
24   California.  Most of the harm from Defendant's alleged infringing activities is therefore likely
25   felt in California even if the bulk of Defendant's accused product is shipped for use elsewhere.
26   <u>See</u> <u>Beverly Hills</u>,  21 F.3d 1558, 1568 n. 21  (Fed. Cir. 1994) (Plaintiff is not precluded from
27   bringing suit in the forum state just because the bulk of the allegedly infringing sales may
28   occur in other states.)   Plaintiff would most conveniently obtain relief in California as its

07CV1116

operations are located in this state.  Also, California has a strong interest in providing relief for its corporate citizens and seeking redress for allegedly infringing activities occurring in this state. Thus,  Plaintiff's interest in convenient relief and the forum's interest in resolving this dispute  weigh strongly in favor of jurisdiction in California.

Moreover, the Court concludes that  resolution of this dispute would not be any more efficient in Texas than in California.   This Court's resolution of this case will spare Texas (as well as other states where the accused products have been sold)  the burden of providing a forum for this dispute. There are no conflict of laws or state-specific social policies at stake here because the same body of federal patent law will govern the claims regardless of forum. Therefore, considerations of efficiency or social policies of the states do not weigh against the Court's assertion of jurisdiction in this matter.

Finally,  Defendant argues that the *de minimis* nature of its interaction with the state of California and the burden it will bear if forced to litigate here weigh strongly in favor of a finding that jurisdiction does not exist in California.  The Court does not agree.  Defendant conducts  a purposeful ongoing business relationship with corporations located in California and, through its marketing activities, makes efforts to continue these contacts.  The Court, therefore, finds that Defendant's contacts with California are not so negligible that Defendant's level of contacts weighs against jurisdiction.[3] Also, although litigating this suit in California will be more burdensome to Defendant than litigating in its home state of Texas, the Court finds that Plaintiff has not produced evidence that establishes more than the usual inconvenience of litigating in an out-of- state forum chosen by the Plaintiff.  Defendant asserts that its offices and personnel are  located in Texas and that numerous documents would need to be produced in California.  These inconveniences do not amount to a significant or  compelling showing of burden given the current state of technology in communication and transportation and the relative proximity of Texas and California.  World-Wide Volkswagen, 444 U.S. at 294.

---

[3]        Moreover, it is unclear whether the level of Defendant's contacts is a balancing factor in deciding the reasonableness of asserting jurisdiction pursuant to Federal Circuit law. Deprenyl v. Animal Health, Inc. v. University of Toronto Innovations Foundation, 297 F.3d 1343, 1355 (Fed. Cir. 2002).

1  For the above reasons, the Court concludes that specific jurisdiction over Defendant exists
2  in this case.[4]  The Court therefore DENIES Defendant's motion to dismiss for lack of personal
3  jurisdiction.

4

5  B.      Defendant's Motion to Transfer Venue

6          As an alternative to its request for dismissal, Defendant also requests a transfer of
7  venue to the Southern District of Texas.   28 U.S.C. § 1404(a) provides that "for the
8  convenience of parties and witnesses, in the interest of justice, a district court may transfer
9  any civil action to any other district or division where it might have been brought."  Relevant
10 factors considered in determining whether a transfer would be in the interest of justice are:
11 1) plaintiff's choice of forum; 2) convenience of parties; 3) convenience of witnesses; 4)
12 relative ease of access to sources of proof; and 5) differences in the costs of litigating in the
13 two forums.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.
14 1983); Jones v. GNC Franchising Inc., 211 F.3d 495, 498-99 (9th Cir. 2000).

15         Here, Defendant argues that convenience factors strongly favor transfer to the
16 Southern District of Texas for the following reasons: (1) Texas is a more convenient forum for
17 non-party witnesses; (2) the records and documents regarding sales of the accused product
18 are located in Houston, Texas; (3) Defendant is a much smaller corporation than Plaintiff and
19 would be significantly burdened by  the additional cost of defending in California; and 4) the
20 Southern District of Texas has a strong interest in resolving this dispute.  The Court disagrees
21 for the following reasons.

22         First, Defendant has failed to establish that the convenience of witnesses would be
23 better served by transferring this case to the Southern District of Texas.  Defendants identify
24 fourteen individuals as key witnesses and assert that they live in the Houston, Texas area.
25 (Ex. A, Frieden Decl. ¶7) Defendant also claims that Houston would be a more convenient
26 location for customers and suppliers of SAT and also for the German manufacturers of the

27 _____

28        [4]       Because it finds that specific jurisdiction exists, the Court declines to reach the
          issue of whether general jurisdiction exists.

07CV1116

1   VIBTOOL device.   (Ex. A, Frieden Decl. ¶7)   Aside from claiming that the alleged "key
2   witnesses" are either "knowledgeable about the features and characteristics" of Defendant's
3   products or act as salespeople for these products, the Defendant has not provided information
4   regarding the content of their proposed testimony.   Defendant also does not provide
5   information regarding the proposed testimony of customers and suppliers. The Court cannot
6   therefore determine the extent to which the testimony of these individuals  would be relevant
7   and necessary in this action.  Given this limited information, the Court can only conclude that
8   it is likely that some key witnesses for the Defendant reside in Texas and just as likely that
9   some key witnesses for Plaintiff reside in California.  The Court also disagrees that Texas
10  would be a more convenient forum for witnesses from the German manufacturer of the
11  accused product.   The Court finds that both Houston and San Diego would be equally
12  inconvenient forums for these witnesses.  While Texas is likely the more convenient forum for
13  Defendant's witnesses, the Court cannot, given the present state of the record,  determine
14  that any one  forum would be more convenient to the majority of the witnesses in this case.

15       Second, the Court also finds that Defendant has not established that the location of
16  Defendant's records and documents weighs in favor of transfer.  Although Defendant alleges
17  that the relevant documents are located at its offices in Houston, Texas (Ex. A, Frieden Decl.
18  ¶8), Defendant has not provided any information regarding the volume of the relevant
19  documents and the difficulty involved in transporting these records and documents to
20  California.   Again, without more information, the Court cannot determine whether  the
21  transportation of documents and records necessary for trial  would create a burden meriting
22  a transfer of venue.

23       Third, Defendant argues that it is a much smaller corporation than Plaintiff and  that
24  defending this case in California would be a significant drain on the company's finances.  The
25  evidence demonstrates that Plaintiff has annual sales of approximately $50 million and
26  belongs to a parent corporation with total sales of approximately $7.75 billion while  Defendant
27  is a small corporation with annual sales of approximately $10.5 million. (Frieden Decl. ¶ 5,
28  McGinn Decl.¶ 1) Defendant however has not provided information such as the  projected

07CV1116

1  additional costs of litigating in another forum and how that amount would compare to
2  Defendant's overall operating expenses. Therefore, while litigating in San Diego may be more
3  burdensome for Defendant, the Court is unable to find that Defendant has made a showing
4  of burden significant enough  to outweigh Plaintiff's choice of forum and California's interest
5  in adjudicating this case.

6       Fourth, although the Court agrees that Texas has an interest in adjudicating the claims
7  brought against its residents, it finds the state of California also has a compelling interest in
8  providing redress for its corporate citizen who claims that its patent is being infringed in the
9  state of California .  For the reasons stated above, the Court finds that a transfer of venue to
10  the Southern District of Texas would not serve the interests of justice.

11

12  C.    Defendant's Motion to Stay

13       Defendant also seeks a motion to stay these proceedings pending a reexamination of
14  the patent at issue.  Courts have inherent power to stay an action pending conclusion of PTO
15  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988).
16  The decision whether to grant or deny a motion to stay proceedings pending PTO
17  reexamination rests within the sound discretion of the court.  See, e.g., Photoflex Products,
18  Inc. v. Circa 3 LLC,  2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal. May 24, 2006).  There
19  is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO
20  reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378,
21  1381 (N.D. Cal. 1994).  In determining whether to stay litigation pending reexamination by the
22  PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether
23  discovery is almost complete and whether a trial date has been set; (2) whether a stay would
24  cause undue prejudice or present a clear disadvantage to the non-moving party; and (3)
25  whether a stay will simplify the issues in question and trial of the case.  See, e.g., Xerox Corp.
26  v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

27       First, the fact that this litigation has not progressed significantly weighs in favor of
28  staying the action.  As stated above,  no trial date has been set.   Only jurisdiction-related

07CV1116

1  discovery has taken place in this matter and the only substantive motions filed have been the
2  ones that are the subject of this order.

3       Second, the Court finds that a stay would not unduly prejudice Plaintiff.  Plaintiff argues
4  that Defendant's request for reexamination at this juncture is part of their dilatory tactics to
5  prejudice Plaintiff.   Plaintiff claims that Defendant could have brought their request for
6  reexamination sooner given that SAT was aware of the infringement allegations as early as
7  October 2005 and had information regarding the prior patents that are the subject of the
8  reexamination request as early as October 2006.  (Berretta Decl. In Support of Opposition ¶¶
9  5 - 6, Exs. 5-6)  However, Defendant's failure to request reexamination during that time does
10  not establish that it was acting with dilatory intent.  The Court notes that Plaintiff could also
11  have filed its complaint earlier if it were concerned about delay.

12       Plaintiff further points out that an average reexamination proceeding takes over twenty-
13  one months and argues that this further delay will cause it irreparable harm in pursuing its
14  right to enforce the patent.   Although the Court agrees that such delays are typical, it
15  disagrees with the argument that  Plaintiff will suffer undue prejudice if a stay is entered.
16  Where "Plaintiffs have an adequate remedy at law," there is no undue prejudice.  Broadcast,
17  2006 U.S. Dist. LEXIS 46623, at *32.  Here, Plaintiff does not specify any particular injury
18  aside from a delay in collecting  monetary damages and excluding SAT from use of its patent,
19  assuming it ultimately wins.  Plaintiff has made no showing that there is no  adequate remedy
20  at law i.e.  that past monetary damages for any infringing activity could not fully compensate
21  Plaintiff.   While Plaintiff is rightfully concerned that a reexamination will significantly delay the
22  prosecution of its patent infringement claims, the delay inherent in the reexamination process
23  "does not constitute, by itself, undue prejudice."  Photoflex Prods. v. Circa 3 LLC, 2006 U.S.
24  Dist. LEXIS 37743 at *5 (N.D. Cal. 2006) citing Pegasus Dev. Corp. v. DirecTV, Inc., 2003
25  U.S. Dist. LEXIS 8052 (D. Del. May 14, 2003).  For the above reasons, the Court concludes
26  that considerations of prejudice to the parties weigh in favor of granting a stay.

27       Finally, the Court finds that the stay will result in the simplification of issues in this case.
28  As explained by the Federal Circuit, one "purpose of the reexamination procedure is to

07CV1116

1  eliminate trial" of the issue of patent claim validity if the claim is canceled or "to facilitate trial

2  of that issue by providing the district court with the expert view of the PTO" if a claim survives

3  the reexamination proceeding. Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir.

4  1983), cert. denied, 464 U.S. 935 (1983); Broadcast, 2006 U.S. Dist. LEXIS 46623, at *9-10.

5  The Court believes that it will benefit from the PTO's evaluation of how the alleged prior art

6  affects the validity of the '164 patent. The PTO's expert evaluation is likely to be of assistance

7  not only as to the issues of validity, but its understanding of the claims is also likely to aid this

8  Court in the preliminary process of claim construction. Accordingly, the Court finds that a

9  reasonable stay is appropriate to avoid the risk of unnecessary litigation and to permit the

10  clarification of issues before this Court. However, if it appears that the reexamination will not

11  be effected within a reasonable time (21-24 months), Plaintiff may move to vacate the stay.

12  Additionally, any party may apply to the Court for an exception to the stay if it has valid reason

13  to believe that it needs to obtain discovery in order to preserve evidence that will otherwise

14  be unavailable after the stay.

15     Therefore, Defendant's motion to stay this proceeding is GRANTED without prejudice.

16  Defendant is ordered to file a notice informing the Court of the PTO's decision on the pending

17  application for reexamination within 10 days of receipt of such decision.

18  **CONCLUSION**

19     For the reasons set forth above, Defendant's motion to dismiss for lack of personal

20  jurisdiction, or in the alternative, motion for transfer of venue [Doc. No. 9]  is DENIED.

21  Defendant's motion to stay [Doc. No. 7] is GRANTED.

22

23

24  DATED:  February 26, 2008

25

26     Honorable Barry Ted Moskowitz
       United States District Judge

27

28

11