# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKF CONDITION MONITORING, INC.,<br><br>    Plaintiff and Counter-Defendant,<br>v.<br><br>INVENSYS SYSTEMS, INC.,<br><br>    Defendant and Counter-Claimant. | Case No. 07cv1116 BTM (BGS)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND COUNTERCLAIM** |

Defendant and Counter-Claimaint Invesys Systems, Inc. has filed a motion for leave to file a second amended answer and counterclaim [Doc. 72]. For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

This is a patent-infringement case. The patent at issue, U.S. Patent No. 6,006,164 ('164 Patent), describes a portable vibration monitor used to detect vibrations and other movement in machines. The present dispute, however, has little to do with the substance of the patent.

Invensys seeks to add a counterclaim of inequitable conduct. Succeeding on the claim requires proving a person associated with filing a patent made a material misrepresentation or omission with the intent to deceive the Patent and Trademark Office ("PTO"). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir.

2009). In this case, the proposed counterclaim would allege that people[1] involved in filing the '164 Patent application for SKF[2] intentionally failed to disclose material prior art to the PTO.

The Court would normally be required to freely grant Invensys's request to amend its answer, *see* Fed. R. Civ. P. 15(a)(2), but the deadline for amending the pleadings has passed. Invensys's burden is therefore heightened; it must show that it acted diligently and that, despite its diligence, it still could not meet the deadline. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–09 (9th Cir. 1992). So in reciting the facts, the Court pays particular attention to exactly when Invensys's learned of the facts underlying its inequitable-conduct claim and whether it could have been more diligent in trying to meet the deadline for amending its answer.

Invensys claims there are two products which SKF knew were prior art but failed to disclose: the Picolog and the Vibrotip. Below, the Court examines separately the facts related to the Picolog and the Vibrotip

**1.    The Picolog**

According to Invensys, the Picolog was prior art which SKF knew about and intentionally withheld from the PTO. There is no question that the Picolog is in the same product category as the '164 Patent. Nor is there any dispute that SKF was aware of it. In fact, SKF itself, the holder of the '164 Patent, actually sold the Picolog and even mentioned it in its application for the '164 Patent:

> A commercially available device of this nature is the Picolog from SKF

---

[1] Invensys specifically alleges inequitable conduct against two patent-prosecution attorneys, Thomas Arno and John Carson of Knobbe Martens; three of the four inventors, William McCarty, Jerry Drury, and Steve Thompson; and also Roger E. Lamberson, who Plaintiff does not identify but Defendant says was a then Vice President of Operations for SKF.

[2] Invensys was not the original Defendant and Counter-Claimant in this action; SAT Corporation was. In 2008, Invensys acquired SAT Corporation, and the parties moved jointly to substitute Invensys as the named Defendant. The Court will refer to Invensys or Defendant throughout this order, which should be construed as a reference to SAT Corporation when discussing events preceding Invensys's purchase of SAT Corporation.

>Condition Monitoring of San Diego, Calif. The Picolog system comprises a handheld probe capable of measuring and storing hundreds of separate vibration level measurements. These measurements are later uploaded to a host computer system for analysis. The Picolog (TM), however, does not provide a real-time output of the vibration measurement.

Other than making this reference in the '164 Patent application, neither SKF and nor anyone affiliated with it formally identified the Picolog as prior art to the PTO.

This reference to the Picolog in the '164 Patent application was not hidden from Invensys. Invensys was aware or should have been aware that the '164 Patent application included this reference to the Picolog. In November 2005, Invensys ordered the file wrapper for the '164 Patent, (Transier Decl. Ex. 8.), which would have included the patent application. So as early as 2005, Invensys knew that SKF believed the Picolog was related to the '164 Patent.

Invensys has not given the Court any evidence that it asked for more information related to the Picolog during pre-litigation discussions in 2005 and 2006.

Once Invensys filed suit and discovery began, it learned even more about the Picolog through an SKF product catalog. In April and May 2010, SKF produced several documents. Among those documents was an SKF product catalog, which included a description and specifications for the Picolog. The product catalog's description of the Picolog was far more specific than the description in the '164 Patent application. The product catalog was not confidential.

In addition to performing document discovery, in late May and early June 2010 Invensys deposed the four inventors of the product described in the '164 Patent. All four of them had heard of the Picolog but did not work on it or remember much about it. (Kjelland Decl., Thompson Dep., Ex. G, 25:1–10; McCarty Dep., Ex. H, 109:16–20; Drury Dep., Ex. I, 86–88; Calderwood Dep., Ex. J, 67:16–24.)

**2.     The Vibrotip**

The Vibrotip was a product manufactured by a company called Pruftechnik. Although the parties have not given the Court much information about the Vibrotip, it appears that it

is in a similar product category as the product described in the '164 Patent. Indeed, the SKF inventors acknowledged as much in a confidential document.

The confidential document, titled Record of Invention and Invention Disclosure, appears to be an internal, confidential SKF questionnaire which inventors complete in order to protect SKF intellectual property and to ensure proper disclosure to the PTO (the "Invention Disclosure"). It shows that three of the inventors[3] described the Vibrotip as the "closest prior art" to the '164 Patent. They identified the "Pruftechnik Vibrotip and stud, (no communications to data logger, route built inside)" as the "closest prior art" which "most closely related to the invention." (Kjelland Decl., Ex. B.) The parties do not dispute that the first time Invensys saw or had access to this document was when it was produced in discovery.

Despite the inventors belief that the Vibrotip was the closest prior art, neither SKF nor anyone affiliated with it disclosed the Vibrotip as prior art to the PTO.

At the depositions, Invensys's lawyers questioned the inventors of the '164 Patent about the Invention Disclosure. Mr. McCarty, Mr. Drury, and Mr. Thompson confirmed they had signed the Invention Disclosure which said they believed the Vibrotip was the closest prior art, and all but Mr. Drury said they had also signed a declaration to the PTO acknowledging their duty to disclose information material to patentability.[4] All three also said they either could not remember or in fact did not take any independent steps to disclose the Vibrotip to the PTO or to the patent-prosecution attorneys.

**3.     The Timeline**

As the Court mentioned above, discovery began in late January 2010. The last day to amend the pleadings was February 26, 2010. The product catalog and the Invention Disclosure were produced sometime in April and May, and the inventors were deposed in

---

[3] The three inventors are Mr. McCarty, Mr. Drury, and Mr. Thompson.

[4] Mr. Calderwood was the fourth inventor, but in the Invention Disclosure he did not write that the Vibrotip was the closest prior art. He has not been accused of inequitable conduct.

late May and early June.  On June 10, 2010, the day after the last inventor deposition, Invensys asked SKF to agree to filing an amended answer.  After some correspondence, SKF said no on June 23, 2010.  And on July 2, 2010, Invensys filed the motion for leave to amend now before the Court.

Fact discovery is scheduled to close on March 14, 2011, and the pretrial conference is scheduled for August 23, 2011.  There is no trial date.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure Rule 16(b), a court can only modify a scheduling order for good cause.  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification."  *Id.*  "It is the moving party's burden to show that good cause exists."  *Robertson v. Sadjak*, No. 09cv136, 2010 WL 1418393, at *7 (D. Idaho April 7, 2010).

If a party establishes good cause for amending a scheduling order, the Court must then consider the amendment under the more liberal standard of Federal Rule of Civil Procedure 15(a).  *See Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson*, 975 F.2d at 607–08).  Under that rule, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Although Rule 15(a) should "be applied with extreme liberality," the court may deny the amendment if there is bad faith, undue delay, prejudice to the opposing party, or if the amendment would be futile.  *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

//
//

## III.  DISCUSSION

**1.  Rule 16: Is There Good Cause for the Late Amendment?**

Plaintiff claims there is good cause for the amendment because it only recently learned through discovery of the basis for the inequitable-conduct claims.  By the time Plaintiff received the relevant documents and took the inventors' depositions, it argues, the deadline for amendment had already passed.  The Court first reviews the elements of inequitable conduct.

To state a claim for inequitable conduct, a party must allege "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp.*, 575 F.3d at 1327 n.3.  Inequitable conduct must be pled with particularity—this means the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1326–27.  Particularity is not required for pleading knowledge of the misrepresentation or omission, or intent to deceive the PTO; knowledge and intent may be pleaded generally with sufficient facts to infer the state of mind. *Id.* at 1327.

With this heightened pleading standard in mind, the Court now turns to when Plaintiff learned of the details underlying its claims.

   A.   The Picolog

SKF disclosed to the PTO that the Picolog was related to the '164 Patent from the very beginning.  It included a brief description of it in the '164 Patent application.  Invensys was aware or should have been aware of the reference to the Picolog in 2005, when it obtained the file wrapper for the '164 Patent.  The file wrapper would have included the patent application and any prior-art disclosures. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005); *Autogiro Co. of America v. United States*, 384 F.2d 391, 398 (Ct. Cl.

1967). This means that, as of 2005, Invensys was on notice that SKF believed the Picolog and the '164 Patent were related and that the Picolog was not formally disclosed as prior art.

Despite this knowledge, Invensys has not shown that it investigated the relationship between the '164 Patent and the Picolog before formal discovery. Invensys could have researched the Picolog based on publicly available documents. The catalog produced during discovery, which has detailed specifications for the Picolog, was not a confidential document. To the contrary, it appears to be a catalog for marketing purposes that Invensys may have been able to get simply by asking.[5] But there is no evidence that Invensys ever asked SKF for information related to the Picolog or otherwise investigated the Picolog's specifications before filing suit.

Although there has been some delay in researching and asserting the inequitable-conduct claim related to the Picolog, there will be no prejudice to SKF if Invensys is allowed to assert it. That is because, as discussed below, the Court will permit Invensys to assert an inequitable-conduct claim related to the Vibrotip, and any evidence regarding disclosing the Picolog to the PTO would likely be admissible under Federal Rule of Evidence 404(b) as it relates to SKF's intent. The Court therefore finds good cause for the amendment.

B. <u>The Vibrotip</u>

There are two important differences between the facts related to the Picolog and the facts related to the Vibrotip. The first is that Invensys did not know until it got the Invention Disclosure that three SKF inventors subjectively believed the Vibrotip was the "closest prior art." The confidential Invention Disclosure shows that three of the inventors said that the Vibrotip was the closest prior art. This document may relate to a crucial element of an inequitable-conduct claim, which is that the accused person knows of or intended the omission. Invensys had no evidence of the inventors' belief until they saw the Invention

---

[5] Diligence requires at least trying to find the document or asking SKF for it. If SKF had said no, then Invensys's argument that it acted diligently would be strengthened. But Invensys has made no showing that it sought more information about the Picolog before the deadline for amendments had passed.

Disclosure and the deadline for amendments had already passed. As discussed above, however, Invensys knew SKF believed the Picolog was a related product as early as 2005. This is a crucial distinction.

But could Invensys have gotten the Invention Disclosure sooner if it was more diligent? Probably not. This touches on the second important difference between the Picolog and the Vibrotip. The Invention Disclosure, unlike the product catalog which set forth the specifications for the Picolog, is a confidential document. It would have been difficult, if not impossible, for Invensys to get that document without using formal discovery. Under the circumstances, Invensys did as much as it could.

Once Invensys had the document, it acted diligently in questioning the inventors about it, promptly raising the motion to amend with opposing counsel, and then filing the motion once opposing counsel would not stipulate to it. Due to the heightened pleading requirements of inequitable-conduct claims, Invensys had a right to depose the inventors and gather more information before asserting its claim. *See, e.g., Kannar v. Alticor, Inc.*, No. 09cv2500, 2010 WL 891289 (C.D. Cal. March 10, 2010) (finding good cause for late inequitable-conduct claim because moving party could only depose key witnesses after the deadline for amendments had passed). Because Invensys acted diligently, did not have notice of the inventors' belief about the Vibrotip until it had the Invention Disclosure, and since that document was confidential, the Court finds good cause for the late motion for leave to amend.

SKF argues that because "Invensys has known about the VIBROTIP for years," it was not diligent in asserting its inequitable-conduct claim. (Opp. 13.) But Invensys's mere knowledge of the Vibrotip is irrelevant. The crucial question is when did Invensys have any reason to know that *SKF* knew of the Vibrotip and believed it to be prior art. And the answer is Invensys knew of SKF's belief only when it received the Invention Disclosure.

SKF also argues that "Invensys has always known that SKF's patent counsel knew of the VIBROTIP's existence during the reexamination." (Opp. 14.) Invensys discussed the Vibrotip with SKF while the reexamination was pending. Therefore, SKF claims, Invensys

could have asserted the inequitable-conduct claim against SKF's patent counsel much sooner. But just because Invensys gave SKF's attorneys information about the Vibrotip in the belief that the Vibrotip was prior art does does not mean that the attorneys then had an obligation to disclose the Vibrotip to the PTO. Invensys could have concluded that the SKF attorneys simply believed the Vibrotip was not prior art. But it was not until the Invention Disclosure, which the patent-prosecution attorneys presumably had access to, that Invensys learned the inventors' themselves believed the Vibrotip was prior art.

SKF focuses on Invensys's failure to give the PTO information about the Vibrotip during the reexamination of the '164 Patent. Invensys's failure to disclose the Vibrotip is not relevant to its inequitable-conduct claim against SKF. It does not matter what Invensys did or did not disclose to the PTO during the reexamination. SKF also makes arguments regarding the merits of, and evidentiary support for, the inequitable-conduct claim. Those arguments are irrelevant to the Court's analysis. The Court's concern is Invensys's diligence, not the merits of its claim. The Court finds Invensys was diligent in preparing its inequitable-conduct claim because the Invention Disclosure was the first thing that gave it notice of a possible inequitable-conduct claim, and once it had the document it acted quickly and diligently to investigate and bring that claim before the Court.

The Court finds good cause for Invensys's late amendment to add the inequitable-conduct claim regarding the Vibrotip.

C.    Prejudice to SKF

Although the Court may consider prejudice to SKF as part of its good-cause analysis, the existence of prejudice "might supply *additional* reasons to *deny* a motion" if a party has not shown good cause. *Johnson*, 975 F.2d at 609 (emphasis added). Here, however, the Court has found good cause and so does not consider prejudice. The Court considers prejudice in the context of Rule 15.

//

//

**2.  Rule 15: Is There Bad Faith, Undue Delay, Prejudice, or Futility?**

Invensys has shown good cause for its late amendment regarding the Vibrotip, but the inquiry is not over. The Court must now determine whether the amendment satisfies the requirements of Rule 15(a). The Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a), but may deny the amendment if there is bad faith, undue delay, prejudice to the opposing party, or if the amendment would be futile, *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). SKF argues that all four factors are present.

A.  <u>Bad Faith</u>

SKF asserts that Invensys's motion is sought in bad faith mainly because during pre-litigation discussions, Pruftechnik, the manufacturer of the Vibrotip, essentially told SKF that the Vibrotip was dissimilar to the '164 Patent and that the Vibtool, the successor to the Vibrotip, did not infringe on the '164 Patent. SKF claims it reasonably relied on this assertion in not disclosing the Vibrotip to the PTO and that Invensys is acting in bad faith in contradicting Pruftechnik's earlier position.

Although Pruftechnik's and Invensys's interests may be aligned, the Court will not hold Invensys accountable for Pruftechnik's representations. Moreover, the context of the pre-litigation dispute was different. There may be legitimate distinctions between the '164 Patent and the Vibrotip, but that does not necessarily mean the Vibrotip was not prior art or that it should not have been disclosed. Indeed, SKF's own inventors believed the Vibrotip was the closest prior art. For these reasons, the Court finds Invensys's motion is not made in bad faith.

B.  <u>Undue Delay</u>

The Court has already found that Invensys acted promptly and diligently with respect to the Vibrotip allegations.

### C. Prejudice to SKF

SKF argues it would be prejudiced because it would now be forced to choose between submitting information about the Picolog and Vibrotip to the PTO and having to redo the reexamination, or defending the inequitable-conduct claim. Having to defend against a claim, which in this case is at least colorable and has some evidentiary support, is not the type of prejudice that supports denying this type of motion. If defending against new claims was enough prejudice to deny a belated motion to amend, then they would never be granted. And that, of course, is not the case. *See, e.g., Bigband Networks, Inc. v. Imagine Commc'ns., Inc.*, No. 07cv351, 2010 WL 2898286 (D. Del. July 20, 2010) (granting belated motion to amend adding inequitable conduct claim).

### D. Futility

SKF also argues that the amendment would be futile. It argues that the proposed counterclaim is not specific enough to meet the requirements of Rule 9(b). As discussed above, inequitable-conduct claims must be pled with particularity under Rule 9(b). *Exergen Corp.*, 575 F.3d at 1326. The claim "must be pleaded in detail," *Id.* at 1327, and must also explain "'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329–30. The party asserting inequitable conduct must allege specific facts and do "more than simply allege that the references are 'highly material and non-cumulative.'" *Advanced Micro Devices v. Samsung Electronics Co.*, No. 08cv986, 2010 WL 963920, at *11 (N.D. Cal. Mar. 16, 2010).

Invensys's proposed second amended answer adequately alleges that the Vibrotip would be non-cumulative. (*See* Proposed 2d Am. Answer ¶¶ 50–55.) Although Invensys never makes that allegation directly, there are several allegations which support a reasonable inference that those references would be non-cumulative. For example, the proposed answer alleges that the Vibrotip and Picolog have additional features not found the "primary reference . . . [which] was discussed during the reexamination prosecution."

(Proposed 2d Am. Answer ¶ 50.)  In another paragraph, Invensys claims that SKF did not bring the Picolog or Vibrotip to a product demonstration during the reexamination.

Invensys also alleges the PTO said that certain new claims which SKF added to the '164 Patent were not disclosed in the prior-art references.  And, Invensys alleges, because these new claims had not been previously disclosed to the PTO, the PTO accepted them.  But according to Invensys, those new features were present in the undisclosed Picolog and Vibrotip.  *See id.* at ¶ 51, 53–55.  So if the PTO had information about those references, it would not have accepted the new claims, Invensys argues.

Invensys only alleges the *PTO said* that the already submitted prior art did not disclose features allegedly present in the Picolog and Vibrotip.  Invensys does not directly allege the references are non-cumulative.  Nevertheless, making all reasonable inferences in favor of the non-moving party, the PTO's statements provide a sufficient basis to infer that the references are non-cumulative.  SKF argues that the Picolog and Vibrotip are cumulative of other references submitted to the PTO, but this issue is better resolved on a motion for summary judgment.

The proposed second amended answer states a claim for inequitable conduct and is therefore not futile.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Invensys's motion for leave to file a second amended answer and counterclaim [Doc. 72].  Invensys must file its second amended answer and counterclaim within seven days of the filing of this order.

**IT IS SO ORDERED.**

DATED:  August 31, 2010

*Barry Ted Moskowitz*
Honorable Barry Ted Moskowitz
United States District Judge